SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------------------ x
                                        :     Index No.

PAUL EWEN, as Personal          :
Representative of THE ESTATE OF    :
BABETTE EWEN, deceased,       :

                           :     **SUMMONS**

                Plaintiff,     :

      -against-              :

ROYALTON LUXURY RESORTS, a   :
corporation; SUNWING TRAVEL    :
GROUP, a corporation and; DOES 1 to :
30, inclusive.,

                Defendants.
------------------------------------------------------ x

        **To The Above Named Defendant(s):**

        **You are hereby summoned** to answer the complaint in this action, and to serve a copy of
your answer, or if the complaint is not served with this summons, to serve a notice of appearance
on the plaintiff attorney(s) within twenty days after the services of this summons exclusive of the
day of service, where service is made by delivery upon you personally within the state, or within
thirty days after completion of service where service is made in any other manner. In case of your
failure to appear or answer, judgment will be taken against you by default for the relief demanded
in the complaint.

        The basis of venue is the residence of the plaintiff.

        Plaintiff resides/maintains a residence in Kings County, State of New York.

Dated: February 17, 2021             Respectfully submitted,
New York, New York

                                    Daniel Lust, Esq.
                                    GERAGOS & GERAGOS, APC
                                    256 5th Avenue
                                    New York, NY 10001
                                    (213) 625-3900
                                    *Attorneys for Plaintiff Paul Ewen, as Personal*
                                    *Representative of The Estate of Babette Ewen*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------- x
                                             :

PAUL      EWEN,   as   Personal   :
Representative of THE ESTATE OF
BABETTE EWEN, deceased,         :

                    Plaintiff,    :

      -against-                    :

ROYALTON LUXURY RESORTS, a   :
corporation;   SUNWING   TRAVEL   :
GROUP, a corporation and; DOES 1 to
30, inclusive.,

                Defendants.
-------------------------------------------------------- x

Index No.

**VERIFIED
COMPLAINT**

       Plaintiff Paul Ewen brings this action for the decedent's wrongful death in a representative capacity on behalf of all potential survivors and/or beneficiaries, including the following: (a) the Estate of Babette Ewen, (b) Paul Ewen, spouse of the decedent, (c) Shanice Ewen, daughter of the decedent, and (d) Nicholas Ewen, son of the decedent, and (e) any other individual entitled to recover under applicable law. Plaintiff, by his attorneys, Geragos & Geragos, APC, brings this Complaint against the Defendants Royalton Luxury Resorts ("Royalton"), Sunwing Travel Group ("Sunwing"), and DOES 1 through 30 ("Defendants") and allege as follows:

## PARTIES

      1.      Plaintiff's decedent, Babette Ewen, at all times herein mentioned was a resident of Brooklyn, New York.

      2.      Plaintiff's decedent, Babette Ewen, died of hypertensive heart disease with sudden cardiac death on December 17, 2019. At all relevant times, Plaintiff Paul Ewen is a resident of Brooklyn, New York. Plaintiff Paul Ewen brings this action for the decedent's wrongful death in a representative capacity on behalf of all potential survivors and/or beneficiaries, including the following: (a) the Estate of Babette Ewen,

2

(b) Paul Ewen, spouse of the decedent, (c) Shanice Ewen, daughter of the decedent, and (d) Nicholas Ewen, son of the decedent, and (e) any other individual entitled to recover under applicable law.

3.      Defendant Sunwing is a corporation and the largest integrated travel company in North America whose headquarters are located in Ontario, Canada at 27 Fasken Dr., Toronto, Ontario, M9W 1K6, Canada.

4.      Upon information and belief, defendant Royalton Blue Waters Resort is owned and operated or controlled by defendant Sunwing Travel Group, therefore making Sunwing liable for its subsidiary.

5.      At all relevant times, defendant Royalton was the owner of the premises, located at Mountain Spring, Trelawny, A1, Montego Bay, JM, Montego Bay, Jamaica.

6.      At all relevant times, defendant Royalton, its agents, servants, and/or employees operated the subject premises.

7.      At all relevant times, defendant Royalton, its agents, servants, and/or employees maintained the subject premises.

8.      At all relevant times, defendant Royalton, its agents, servants, and/or employees controlled the subject premises.

9.      At all relevant times, defendant Royalton, its agents, servants, and/or employees managed the subject premises.

10.     At all relevant times, defendant Royalton, its agents, servants, and/or employees inspected the subject premises.

11.     At all relevant times, defendant Royalton, its agents, servants, and/or employees supervised the subject premises.

12.     At all relevant times, defendant Royalton, its agents, servants, and/or employees repaired the subject premises.

13.     The true names and capacities, whether individual, corporate, associate or otherwise of defendants designated herein as DOES 1 through 30, and each of them,

3

are unknown to plaintiff, who therefore sue said defendants by their fictitious names. Plaintiff will amend this Complaint to show their true names and capacities when they have been ascertained. Plaintiff is informed and believes, and based thereupon alleges, that each of said fictitiously named defendant is negligently responsible in some manner for the occurrences herein alleged, and that plaintiff's injuries and damages, as herein alleged, were proximately caused by said negligence.

**JURISDICTION AND VENUE**

14.     The Court has jurisdiction over the matter alleged herein under N.Y. C.P.L.R.§301.

15.     At all relevant times, Defendant Sunwing, was existing under and by virtue of the laws of Ontario, Canada.

16.     At all relevant times, Defendant Royalton, was existing under and by virtue of the laws of Ontario, Canada.

17.     At all relevant times, upon information and belief, Defendant Royalton, was a foreign corporation duly authorized to do business within the State of New York.

18.     At all relevant times, Defendant Royalton, transacted business within the State of New York.

19.     At all relevant times, Defendant Royalton, regularly did or solicited business within the State of New York.

20.     At all relevant times, Defendant Royalton, regularly advertised to obtain customers from within the State of New York.

21.     At all relevant times, Defendant Royalton, regularly solicited customers from within the State of New York.

22.     At all relevant times, Defendant Royalton, advertised to obtain customers from within the State of New York via the internet.

23.     At all relevant times, Defendant Royalton, derived substantial revenue from customers obtained from within the State of New York.

4

24.     At all relevant times, Defendant Royalton, derived substantial revenue from interstate and/or international commerce.

25.     At all relevant times, Defendant Royalton, expected, or should have reasonably expected, its actions to have consequences within the State of New York

26.     Additionally, Plaintiffs are informed and believe, and thereon allege, that this Court is the proper venue for trial because a majority of material witnesses are located here.

## **FACTUAL BACKGROUND**

27.     On or about December 13, 2019, Plaintiff and their family traveled with the decedent Babette Ewen to the Royalton Blue Waters Resort ("Royalton") in Jamaica to attend their friends' wedding.

28.     On or about December 17, 2019, the decedent was sitting by the Royalton pool with her family and friends when she noticed she was feeling ill. She, her family and friends immediately, and repeatedly sought defendant Royalton staff for medical assistance.

29.     Defendant's staff receptionists were dismissive to the family's pleas for help and treated the decedent's health with a lack of urgency and responsiveness. Defendant's receptionists took up to ten minutes to locate their hotel nurse, who took more than 15 minutes to arrive at the pool where Babette was losing consciousness and struggling to breathe.

30.     During this critical delay, the decedent's condition was rapidly worsening. When defendant's hotel nurse finally arrived to treat the decedent, they brought with them an empty oxygen tank and a bag of expired and non-functioning medical supplies.

31.     Once the decedent was brought to the hotel lobby, the defendant's hotel nurse stood by and watched as the decedent's friends were attempting to resuscitate her.

32.     Upon information and belief, defendant's hotel staff brought two additional oxygen tanks to try and administer oxygen to the decedent, however both oxygen tanks

5

were either empty or did not have the proper parts to function correctly.

33.    As Babette's condition continued to worsen, friends accompanying the decedent asked the hotel nurse if she had any tools to aid in the resuscitation of the decedent such as an automated external defibrillator ("AED"). Upon information and belief, defendant Royalton did not have an AED on-site.

34.    An AED is a portable electronic device that automatically diagnoses and treats cardiac arrest by reestablishing an effective heart rhythm. This treatment is called defibrillation, which applies an electric shock to the entire heart muscle, uniformly clearing the electrical activity of the heart, allowing it to resynchronize. The patient can then be safely transported to a hospital for additional health care. Without prompt access to an AED, the great majority of heart attack victims will die before a normal heart rhythm is restored.

35.    Given the life-saving efficacy of AEDs, and the relative inexpensiveness of the device and training to use it, by the year 2000 at least, AEDs were standard in corporate and governmental offices, shopping centers, airports, restaurants, sports stadiums, schools, universities, community centers, hotels and other places where large groups of people are invited to gather, and the risk that someone among those invited will suffer a sudden cardiac arrest is quite likely.

36.    It was reasonably foreseeable that given the large numbers of hotel guests who stay at the Royalton Hotel, that one of them, such as Ms. Ewen, would likely suffer a sudden cardiac arrest while on the hotel's premises. It was, therefore, highly foreseeable that the defendant's failure to have a functioning AED and oxygen tanks immediately accessible, and trained staff on duty, for such an emergency subjected individuals like Ms. Ewen to an increased risk of death because there would be no timely way to restore normal cardiac rhythm.

37.    By failing to have a functioning AED and oxygen tank on the premises of the Royalton Blue Waters Resort, and by failing to adequately train its staff in the use of

6

an AED and oxygen tanks, the defendant disregarded the applicable standard of care for the provision of emergency first aid and guest/invitee protection in places of public accommodation and assembly, to their guests who suffer a sudden cardiac arrest.

38. In addition, Royalton Blue Waters Resort staff did not call for emergency medical services to rush the decedent to a hospital for proper medical care once they realized they did not have the adequate tools to properly treat and resuscitate the decedent.

39. Friends of the decedent notified the decedent's daughter, Shanice Ewen, to come to the hotel lobby to check on her mother.

40. Upon information and belief, once Shanice arrived and surveyed the situation, she attempted to call emergency services for her mother on her cell phone, however, her phone plan did not have international calling and she was unable to summon help. Additionally, the wedding group and friends of the decedent assisting the decedent were unable to call emergency medical aid due to their non-international phone plans.

41. After many precious minutes wasted, and at the urgent demand of the decedent's daughter, defendant Royalton's staff then called emergency services to come to the aid of the decedent. But by then, too much time had passed and it was too late. Babette Ewen tragically passed away and was pronounced dead at the hospital.

42. The Royalton Blue Waters Resort breached its duty to render timely and reasonable aid and protection to it guests, such as decedent Babette Ewen. See e.g. Restatement (Second) Torts, § 314A(1).

43. Ms. Ewen was only 55 years old when she died. Her cause of death was hypertensive heart disease with sudden cardiac death. Had she received a timely, properly administered AED shock by Royalton Blue Waters Resort staff, or received a proper supply of oxygen from a functioning oxygen tank, or had arrived at the hospital sooner, she likely would have survived.

## FIRST CAUSE OF ACTION

7

**WRONGFUL DEATH**

**(Against All Defendants and DOES 1 to 30)**

44.     Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

45.     Plaintiff bring this Cause of Action for wrongful death damages pursuant to NY CLS EPTL § 5-4.1, including pecuniary injuries resulting from plaintiff's decedent's death to the persons for whose benefit this action is brought, the reasonable expenses of medical aid, nursing and attention incident to the injuries causing plaintiff's decedent's death and the reasonable funeral expenses of plaintiff's decedent paid by the Distributees, and/or for the payment of which any Distributee is responsible.

46.     Pursuant to its relationship with Ms. Ewen, the defendant as owner and operator of the Royalton Hotel had a duty to exercise reasonable care for the safety, protection, and first aid of Ms. Ewen in the event she experienced a medical emergency. It is well-known that when someone has a heart attack, every minute counts. And every minute there is a delay, the risk of harm to the victim increases.

47.     Defendants knew, or should have known, that if one of their guests, such as Ms. Ewen, suffered a heart attack or cardiac arrhythmia on its premises, that without timely access to a functioning AED, Defendants were affirmatively creating a dangerous condition, making it reasonably foreseeable that its guests, such as Ms. Ewen, would be severely injured or die before receiving professional emergency care.

48.     Defendants knew, or should have known, that if they lacked the proper medical tools to treat a guest, that they should immediately call for professional medical emergency responders.

49.     Defendants fell below the standard of care by knowingly delaying the arrival of professional emergency medical treatment once it was clear they lacked the medical tools to properly treat or resuscitate Ms. Ewen.

50.     As direct and proximate result of the above-described wrongful acts and

8

omissions, neglect, default and other wrongful conduct of the defendants herein, as alleged above, the failure to provide adequate first-aid and protection to Ms. Ewen, her cardiac episode was not properly and timely treated, and as a result, she could not be resuscitated.

51.     The decedent experienced severe emotional panic and mental distress prior to her death, as well as bodily pain and conscious suffering. She also suffered pecuniary loss, including, but not limited to, hospital and medical expenses and loss of future earnings.

52.     As direct and proximate result of the above-described wrongful acts and omissions, neglect, default and other wrongful conduct of the defendants herein, as alleged above, plaintiff suffered economic damages including but not limited to medical bills, lost wages, funeral and burial expenses, and other expenses associated with the plaintiff's decedent's injuries and death.

53.     That Plaintiff immediately prior to the occurrence was in good health, sound physical condition, industrious, and in possession of all his faculties.

54.     That the plaintiff herein and distributees were dependent upon Plaintiff for services and aid, all of which have been lost by the decedent's death; and the plaintiff herein has incurred expenses for medical, hospital, funeral, burial and other expenses in connection with the death of the Plaintiff.

55.     By reason of the wrongful acts and/or omissions, neglect, default and other wrongful conduct of the defendants herein, as alleged above, the plaintiff's decedent sustained lost wages, income and benefits, lost earnings capacity and other damages.

56.     Accordingly, defendants are liable and responsible for the wrongful death of the plaintiff's decedent and all damages and pecuniary injuries resulting from the plaintiff's decedent's death to the persons for whose benefit this action is brought, the reasonable expense of medical aid, nursing and attention incident to the injuries causing plaintiff's decedent's death and the reasonable funeral expenses of plaintiff's decedent paid by the Distributees, and/or for the payment of which any Distributee is responsible, in an amount to be determined at trial and in an amount that exceeds jurisdictional limits of al lower courts

9

which would otherwise have jurisdiction.

## SECOND CAUSE OF ACTION

### SURVIVAL DAMAGES

### (Against All Defendants and DOES 1 to 30)

57.     Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

58.     Plaintiff brings this Cause of Action for survival damages pursuant to NY CLS EPTL § 11-3.2(b).

59.     By reason of the wrongful acts and/or omissions, neglect, default and other wrongful conduct of Defendants herein, as alleged above, plaintiff's decedent was directly and proximately caused to suffer serious and fatal injuries, including but not limited to severe emotional panic and mental distress prior to her death, as well as bodily pain and conscious suffering up until the time of her demise on December 17, 2019.

60.     By reason of the wrongful acts and/or omissions, neglect, default and other wrongful conduct of defendants herein, as alleged above, plaintiff's decedent also suffered pecuniary loss, including, but not limited to, hospital and medical expenses and loss of future earnings.

61.     Accordingly, defendants are liable and responsible for the injuries and damages suffered and incurred by the plaintiff's decedent up until the time of her demise, in an amount to be determined at trial and in an amount that exceeds jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## PRAYER FOR RELIEF

Wherefore, plaintiff, as personal representative of the estate of Babette Ewen, by his attorneys Geragos & Geragos, APC, hereby demands a jury trial prays for the following relief: 1) Compensatory damages in an amount to be determined by a jury; 2) Punitive

10

damages in an amount to be determined by a jury; 3) Costs, interests and attorneys fees; and, 4) Such other and further relief as this court may deem just and proper, including injunctive and declaratory relief. Plaintiff demands judgment on all causes of action in an amount exceeding the jurisdictional limits of all lower Courts which would otherwise have jurisdiction, together with interest, costs, and the disbursements of prosecuting this action.

Dated: February 1⁊, 2021
New York, New York

Respectfully submitted,

Daniel Lust, Esq.
GERAGOS & GERAGOS, APC
256 5th Avenue
New York, NY 10001
(213) 625-3900
*Attorneys for Plaintiff Paul Ewen, as Personal
Representative of The Estate of Babette Ewen*

11

## ATTORNEY'S VERIFICATION

DANEIL LUST, an attorney duly admitted to practice before the Courts of the State of

New York, affirms the following to be true under the penalties of perjury: I am an attorney at

GERAGOS & GERAGOS, APC, attorneys of record for Plaintiff(s): PAUL EWEN, as

Personal Representative of THE ESTATE OF BABETTE EWEN, deceased.

I have read the annexed COMPLAINT and know the contents thereof, and the same are

true to my knowledge, except those matters therein which are stated to be alleged upon information

and belief, and as to those matters I believe them to be true. My belief, as to those matters therein

not stated upon knowledge, is based upon facts, records, and other pertinent information contained

in my files.

This verification is made by me because Plaintiff(s) is/are not presently in the county

wherein I maintain my offices.


DATED:      New York, New York
            February 17, 2021


                                                    DANIEL LUST


12